May it please the court. I'm Victor Marcello. I represent D & J Investments and the other plaintiffs in this action. Your Honor, federal jurisdiction is absent in this case because the LDEQ, Louisiana Department of Environmental Quality, was properly joined. Under Smallwood, a defendant is improperly joined if there's no reasonable basis for the district court to predict that the plaintiff may be able to recover against the defendant. Of course, there's two ways to show this, and the trial judge took the first route, which is a 12b6 type analysis, and decided as a matter of law that there was no deal. Can I ask how you distinguish Butler? So the district court in Butler said your claim against LDEQ needs to be an administrative one, which you haven't done, and dismissed the claim under 12b6, and we affirmed that. We, the Fifth Circuit, affirmed that part of the decision. There was another part reversed on the prescription, but we affirmed that. So why doesn't that answer this question? I don't think, I think Butler is totally irrelevant for obvious reasons. The regulation in Butler provides that the DEQ is to give notice of beneficial environmental projects to parties who apply to receive the notice. The only public notice in that regulation is to publish beneficial, notice beneficial environmental projects. This is completely different, and Butler is contrary to overwhelming jurisprudence. But I mean, the Fifth Circuit affirmed. We're the Fifth Circuit, so whether we were wrong in Butler or not, I dissented from part of it, just not on that, we still are bound by it. So that's why I'm trying to understand you're saying, but I mean in that case, that involved pollution that was not being warned of, and that's similar to what we have here. Tell me the difference. The difference is that the duty, the regulation, the alleged duty in the regulation, the regulation did not provide a duty or did not mandate a duty to inform the public of pollution. It mandated that the public be informed of beneficial projects, and if you wanted to be informed, once you got public notice, then you told the DEQ, I want to know more, anything that happens here, and the DEQ has to send that notice. This case involves a completely different regulation, Section 109 of the Administrative Code, and in Section 109, there is a mandatory duty that the DEQ shall provide notice to the public for sites within the DEQ's jurisdiction, and it shall issue notice when there are releases that pose a threat to public health. This all, this regulation was adopted. Why did you say that Butler was wrong if you think Butler is irrelevant? Butler is irrelevant because the public, the public notice that is required in Butler is only to notice. I understand why you're arguing it's irrelevant, but why were you arguing it was wrong? Why should you argue that if it's not relevant? Well, I'm arguing that it's really not relevant. We don't have to go by this particular Butler because it's unpublished, right? No, Butler is public. No, just a moment, please. Let me, can I ask my question? Butler v. Dinka, the Eastern District, in the first appeal, the court held that plaintiffs forfeited the argument, and then in the second, an unpublished decision, the court succinctly affirmed. Isn't that right, or is that not right? So Butler, Butler did not resolve the issue. It was in the published decision is failure to brief. Isn't that the issue? And then Acosta v. Dinka performance is an unpublished decision where there was no further analysis of the improper jointer. Is that, is that incorrect, the procedural history? I have to confess I don't know that. The decision Judge Haynes is talking about is a decision by Judge Feldman on the particular. It was affirmed by, Butler, which was published. But affirmed on the grounds of failure to brief. That's what you're asking to address. But obviously you're not really that up on Butler. Well, I'm up on, I'm up on the decision on what Judge Feldman said in Butler, and the reasoning in Butler is not applicable to the reasoning here. And as much as we respect Judge Feldman, we're not bound by a decision that Judge Feldman made that was affirmed on some other grounds, are we? That is correct, and if you read Butler closely, the subtext of Butler is that, to me, Judge Feldman was quite upset with the plaintiff's attorney for not informing him of certain aspects of the case. But then you do need to address Acosta, which is unpublished, and you could say, well, you are not bound by that either. But that one does seem to get to it, and it cites the International Energy Ventures, and it makes the point that that agency isn't improperly joined. The point, I think this is the problem, and I think the court needs to face this issue. The issue is that duty under Louisiana law depends on the facts and circumstances of each case. We have, and there are a whole host of cases that talk about the various things that can be considered in determining duty. The Hardy case talks about jurisprudence and principles of fault and statutes and regulations. Here, we have a regulation that is directly in point that provides a mandatory duty, a shall duty, and it was not complied with. Okay, and then what, let's just for a moment put aside Butler and Acosta and just focus on what you just said. What suggests that then that means, because there's a lot of things, for example, that the U.S. government has to do, but you can't go sue them if they don't, okay? So, the same with states. What is it about that obligation that allows a private party to sue for money if the state doesn't do what it's supposed to do? Because the regulation is explicitly directed to providing notice to the general public and to parties and people in the general public who are subject to risk from hazardous releases. That's not a discretionary act. It's not a discretionary act. Whatever it may have been before Governor Foster issued his proclamation and then it was made into a more particularized regulation, that's the law now and that's the law that governs this particular case. So, you're saying that all obligations of the state can be sued for, that's your argument? I am not saying that whatsoever. So, what is it about, that's why I'm asking, what is it about this one that makes this obligation suable for damages, not just declaratory relief, injunction, whatever? Because there's been a validly adopted, first of all, there's been a validly adopted several things. Number one, there's been a validly adopted that the DEQ provide notice to the public and if the DEQ has any duty at all, it has a duty to protect the public and the issue, I remind the court, is not whether in the final analysis a Louisiana court's going to find this. The issue is whether I have a possibility of proving it. The state immunity is allowed for discretionary acts, is that right? Right. And you're saying this is not a discretionary act, the regulation mandates the warning. The regulation mandates the warning. There is, what the district court held was that there was no specific duty under the law that had to be performed within a specific timeframe. That's the holding of the district court. The law says there is a specific duty that has to be performed within a specific timeframe. And what is that specific timeframe? The specific timeframe is set out, first of all, there's a triggering events that are described in the regulation and if the triggering event happens, then the timeframe is, if it's exigent circumstances, the notice is to be sent immediately. If it's not exigent circumstances, then it's a very, very specific regulation. But aside from the regulation, there is a long line of jurisprudence that describes how this is all supposed to be handled. And Judge Brady has an excellent description of the analysis of Louisiana law and particularly of the discretionary function statute. And what the baton decision, and he's talking about the Hardy Supreme Court decision in the Supreme Court, he's saying if you have a specifically provided course of action, the agency is supposed to follow that specifically provided course of action. But if you don't, that does not end the inquiry. Then you have to look at the facts of the case to see whether it was truly a policy decision. And of course, the district court in this case did not look at facts by its own admission. It did this. It made this determination of duty solely on the basis of what it believed the duty was under the law. Mr Marcella, I have a couple of questions. The first one is given that this keeps coming up in the media, we certify this to the Louisiana Supreme Court. And my second question is, do you win if we're not sure whether Louisiana would allow this under the case called Rico v. Flores, which says that if the defendant appellees fail to meet their burden of showing improper joinder, then the plaintiff's appellants win. So that's a somewhat friendly question, I guess, the second question, but that's very much in point because by the very fact of certification to Louisiana Supreme Court, uh, indicates that there is a possibility that I may win. And if there's any possibility that I may win, then there's no jurisdiction. But should we certify and get this cleared up for once and for all? Well, I would. I would prefer if the court got it done once and for all. Right now, I'm sure the court has an option to certify. I've tried it before. Uh, I've asked the court this court to certify a couple of questions in the past. It's never happened. I'm not asking that it's not asking us today. Do you think you win? I think I win it anyway. Correct. I think I win. And do we need to reach any other issues or only this improper joinder issue? Well, the improper joinder issue permeates the entire argument. What if we, um, stayed this case undid the injunction and let that state court proceeding go forward? And then we'd find out what the state says. Because if the state says no, you can't sue L. D. Q. Then we do have jurisdiction. But they say you can then we don't. That's certainly that is certainly an option. And what I would caution the court about on that is that the district judge believes that how he has to follow eerie to the T and that he needs a Supreme Court case to be sure we have a duty. He says that said that on the record in the argument on the injunction. If isn't that the backwards way of looking at? Yes, although you're not supposed to make sure there is a claim, you're supposed to say that there's not a claim to find improper. Exactly. And if I'm able to prevail in a Louisiana district court on whether or not there's a duty, that should end the question. That means there's a possibility that I can recover and that there's no jurisdiction. Uh, does the abeyance make sense? Excuse me? Would in abeyance make sense in this case? Um, I think a lifting of the injunction would make sense in this case because we could go forward and the court would have to reinstate the without prejudice dismissal. And if if your honors, I think it's a footnote 25 in in the International Energy Ventures case basically says that once uh and uh without prejudice dismissal is entered with regard to uh an alleged improperly joined party, then the plaintiff is free to go to state court to try to file his case and pursue his claim because the court this court doesn't have jurisdiction obviously to rule on the merits of of a claim against a non diverse party. Uh, now there are other issues here. I don't know whether the court wants me to address those issues. Uh, in all five seconds, five seconds now in line. Okay. The what I'd like the court to look at. Also, if there's a jurisdictional, oh, I'm sorry. Thank you. Sorry. You've saved time for rebuttal. Um, say five minutes. Thank you. Morning. Your honors. They please the court. Aaron Street on behalf of the Apple ease. I'd like to turn first to the improper joined her questions that your court that this court has already asked my friend on the other side. What we have here is a blatant attempt to defeat removal jurisdiction by joining a state agency in a case that alleges contamination by private parties. And this court has seen this gambit before in both Butler and Acosta. Okay. So what's your response to his argument? So putting aside, you know, the in and out, it's published. It's not what is different. He's saying it's totally different. Uh, rules that are at issue. And so can you administrative rules? So can you tell me whether that's right or wrong in your view? Well, it is a different statute at issue in Butler. That's correct. Here, there's actually no statute that imposes a duty. There is a regulation that they brought up for the first time in their reply brief, and we can talk about why regulations cannot create duties or causes of action under Louisiana law. We would have a lot to say about that if we had an opportunity to respond when they raised the regulations in the reply brief for the first time. I'm happy to do that here this morning. But at the broader level, Judge Haynes, your question was exactly correct that this Butler was a case about failure to notify of allegedly dangerous contamination at a manufacturing facility. It's the same general allegations here. Yes, it's a different statutory scheme in that case and regulatory scheme here. But the opinion in Butler relied on broader principles of Louisiana public policy about why D. E. Q. Does not have a court about the district court's opinion. Yes, Your Honor. Let me so we're not. That's you're just arguing that's persuasive and interesting, aren't you? I am. I am trying to answer Judge Haynes's question about why this court's affirmance and Butler and this court's affirmance and cost Acosta addressed a broader set of issues about why D. E. Q. Does not have a tort duty under Louisiana law. Our firm instant Butler didn't didn't address those issues. We found improper. Not enough briefing, didn't we? I'll defer to Your Honor's reading on that. I think it's a bit unclear, but I would say whatever happened in Butler, this court in a cost of matters a lot, doesn't it? Because one would be we'd be bound and the other one when we wouldn't be bound at all. I don't dispute that, Your Honor. But what I do think is indisputable is that in Butler, the district court did rely on broader issues of Louisiana public policy that says D. E. Q. Cannot have a tort duty imposed upon it because the proper method for challenging D. E. Q. Actions is through Louisiana A. P. A. And the administrative route I'm wondering about. Is that true here as well? Because as you say, it's an administrative regulation that's a little bit different, but that would seem to make it even more of a need to go to the administrative relief first. Absolutely, Your Honor. And so is there an argument that they failed to do that and therefore we wouldn't have I don't think either in Butler or in this case it was an exhaustion type of issue. The issue was they got your remedy. Yes, your remedy is through the A. P. A. It's not through a civil tort suit in which the Louisiana Supreme Court has directly said in Ray American Waste that the D. E. Q. Is a regulatory body. It's not subject to civil suits in the original trial courts in Louisiana. The remedy is through the Administrative Procedure Act. And that's what Judge Feldman. Yes, the district court relied on in Butler. However, the court came to affirm in Butler. It did affirm that holding whether it was because the appellants couldn't even bear to defend it or or what. But then I do want to turn to Acosta because there the court did have before it jurisdictional. Yes, that was improper joined her as was Butler. That was unpublished. Well, Butler was a capo. No, I'm sorry. Acosta was unpublished. So it did give did give two or three sentences of reasoning. But we're not bound by it, are we? No, you're not bound by it. But I think my point is simply that yes, in Butler, the reasoning was sparse or it was an improper briefing issue. But my point is simply in Acosta. These issues of D. E. Q. Duty were briefed in a virtually identical set of facts. And this court didn't just say, you know, affirmed as your honor mentioned, it did say we've already dealt. It said we've already dealt with this in Butler. So it interpreted Butler as having resolved these issues. And it said, therefore, we don't need to talk about this issue anymore. So when I read those two cases together, I read this court as having closed the door on D. E. Q. Duty. If we rule in your opponent's favor on this point, are we acting inconsistently with Acosta and Butler in your view? Yes, your honor. But even though these are different rules or different orders, whatever the right distinction between the administrative regulation and statute would be. Yes, I think it would be different provisions. That's what I was trying to say. Yes. And to rule for my opponent, you would also have to get over the fact of appellate waiver. He also didn't raise these regulations in the improper joinder briefing. The whole case was about whether D. E. Q. Duty. Now, he found some extra law that wasn't cited in the original brief. But the argument was before us. It was briefed. They found additional law. I'm not sure that that he's barred from doing that. Well, Louisiana law requires a statutory duty or duty imposed by a court decision. And so if you're going to brief, what about a regulation? We have not seen any case. It's certainly from a Louisiana court that holds that a regulation can impose a duty that's actionable and tort. And I think we all sort of seen the opposite, though, because remember, the burden again is that you have to prove that they couldn't bring the claim under the Rico v. Flores standard. And that's just one example of that. But so is that can you tell us whether Louisiana law holds the opposite that you cannot have a duty from a regulation? Let me talk about Louisiana law, and then let me circle back to the Rico before his question. And first of all, I think, as Judge Haynes asked me, Yes, Butler and Acosta resolve this question as far as this court is concerned. But let's talk about Louisiana kind of binding way. I do going to defer to each panel members reading of those cases. But let me talk about Louisiana law, because that is what is indisputably binding. And as I mentioned at the outset in Ray American Waste and Pollution, the Louisiana Supreme Court said that matters within the D. E. Q. S. Regulatory jurisdiction are not fit for resolution in the original trial courts of Louisiana. They must go through the A. P. A. Process. That's binding Louisiana Supreme Court precedent. That's why Judge Feldman dismissed. That's why a lot of these other cases yes, yes, Your Honor. That would be the case as to all of those scenarios that have to do with the remediation and notification process. Um, it citation for that in Ray in Ray American Waste. It's I don't have the direct citation cited in our brief, though. It's 2001 Louisiana Supreme. And it says regulations. It refers specifically to regulations. I'm not saying that that case holds squarely that regulations cannot create a duty. It's at a broader level than that. It says if you wish to challenge D. E. Q. Regulatory actions, which is what we have here, right? We have a cleanup that's being done pursuant to very complicated regulations. Then you have to go through the administrative procedure route. You don't get to come in and second guess with the tort damages lawsuit the way the agency is doing the cleanup. It's 5 88 Southern 2nd 3 67, at least according to your brief. That's different having the initial warning of something the agency knows about. I think that that the Louisiana regulations treat that is all part of the same process. If you read the recap regulations that are at issue regulation, certainly doesn't treat it the same way. Well, again, let me mention that it is a regulation. I mean, I think we all sort of intuitively understand. It's awfully hard for regulation to create cause of action and all the cases. Mandatory duty. Well, because the Louisiana Supreme Court has looked at this broader issue of creating a duty as the D. E. Q. And I've already mentioned the in Ray American Waste case and also mentioned the Williams versus Galeano case, which held no duty to third parties with respect to monitoring landfills. Now, I think where your honors question may come in is there's there's really two phases to the inquiry of whether there's an actionable case here. There's whether there's a duty that can be sued on a could that regulation come into play as to whether a discretionary function immunity is at issue? I think it could. But first, you would have to get past the Louisiana Supreme Court cases that say these are not tort duty issues. These are issues for the Administrative Procedures Act. It was around the same time, I think. But you're right. That regulation was not directly considered in these cases. But the Louisiana statute is also quite clear on this point. And this goes to both of all the panel's questions. Really, this is Louisiana Environmental Quality Act, which is 30 22 71 a four cited in our brief. It says, quote, The state cannot and should not bear the costs associated with a private profit making venture. And that's specifically in the context of a statute that's talking about hazardous waste remediation and the danger from contamination. So the idea of Louisiana public policy affirmed by the Supreme Court is that if you have a contamination issue, you sue the parties that allegedly caused the contamination. If you don't like what the agency is doing in terms of notification and in terms of the remediation, you go through the administrative process. Footnote seven of the district court's opinion. Footnote three of our brief. We lay out the various administrative options that would be available and just getting back to the regulation for a second. Judge Davis, even if you look at that regulation now, plaintiffs don't give you the whole regulation in their brief. So I would urge the court to actually go back and read carefully. That whole regulation is very brief. But what what the regulation says it doesn't create non discretionary duties. It says that the notifications again talking directly about the notifications. Notifications are required only quote as reasonably determined by L. D. E. Q. To be appropriate. So even to the extent it requires notification, it vests significant discretion in D. E. Q. To determine when to give the notification. And it goes on to say that the notifications are given to those parties that D. E. Q. Quote reasonably determines who is likely to or agency discretion. This would be like going and trying to sue the EPA for damages over a circle of cleanup. We all know there's ways you challenge circle of cleanups through administrative procedures, but you don't get to go in and sue in Louisiana is no different. Um, both. Are you gonna address the Rico point? Yes, Your Honor. I think the way that that case and other cases phrase the improper joinder question is a bit out of step with International Energy Ventures, which sites right and Miller and says that we would need to go by the earlier case. You know that very well. Well, I would suggest that the cases can be reconciled. And the difference is remember that I. E. V. M. Held for the first time squarely that it was a 12 B six type inquiry. So when you had some different standard that applied, I think it made more sense to say, Well, is it an unclear question? Then you get a remand. But in in IBM, the court says 12 B six, which means pure issues of law can be resolved on improper joinder. It's just a straight up de novo legal question. And the court said, and I want to spend a lot of time discussing this. I mean, I don't know that it's so straightforward. Well, by the very nature of this argument today. Well, Your Honor, again, we would welcome the chance to brief the regulations. Those were brought up for the first time in the reply brief. If this court would like that, but we think it's clear based on Butler and Acosta. We think it's clear what you say. They've waived those regulation points because they didn't raise it in their original brief. Yes, even if they might be right. Ultimately, they wait that you've got the problem. You can't wait jurisdiction. Well, I don't think this is an issue of jurisdiction when it comes to the what they're asserting. Right. So what I would say, and this goes back to Judge Davis's question. Well, isn't this a legal issue of duty? And therefore, can't they come up with additional arguments? And I think that's generally that's true, although probably not your reply brief. But if you're trying to impose a private tort duty on a state agency, it really is incumbent on the plaintiff to cite the statute or the regulation that it thinks imposes the duty. And it didn't do that below. It didn't do that here. And in a civil law jurisdiction, it's pretty remarkable that they can't cite a statute doing a 12 B six analysis. We look at what they pled and did they plead a claim. And if they didn't, the fact that they might could have somewhere down the road doesn't change that. The 12 B six ish analysis was correctly made. That's your point. That's precisely correct. But all they have to say is that there is a duty. Um, and then you say there's not a duty, and then they have to marshal way. They think there is a duty. Well, I don't think that that's true. Your honor, in terms of a Twombly type of pleading, they would need to plead some substance that suggests that a duty exists here. Was this the pleading from the state court that they replete? This would be the initial pleading from the because the state court pleadings not gonna be the same as the Twombly level pleading in most jurisdictions, except maybe Texas. Now, well, I actually think Louisiana and Texas may be the same. Louisiana and Federals are the same now. But setting that aside, do you see what I'm saying? You know, your initial pleading is not gonna be Twombly proof, and we are not suggesting necessarily. Let's just accept that they don't have to put the statutes and the regs in the When we move, when we remove the case and the question of improper joinder is briefed, an improper joinder turns on whether there is a duty under Louisiana law as to this agency. Absolutely, it is then incumbent on them to cite a statute or the regulation that they think imposes the duty. And when the case comes on appeal to this court, it's certainly incumbent on them at that point to cite the regulation or the statute and not wait to the reply belief. So we have no supplemental briefing in this case, Mr Street? No, we did not. Well, I mean, that's come up repeatedly that you haven't had a chance to address this or to assert that they've waived it or whatever. And you haven't ever asked for a chance. Have you until just today in the argument? And I'm not asking for it now, in the sense that we think that a regulation cannot create a duty under Louisiana law. This whole theory of D. Q. Duty is foreclosed by Louisiana statute and case law. And we need to talk about the injunction at some point. Yes, Yes, Your Honor. So I had a question, though, that I want to ask back to this point, and that is that Louisiana is the only state in the country, as far as I know, that is a civil law state. And so there isn't any common law that could be created as I understand it. And so does that make a difference in this analysis? The lack of a statute? I think we're in a strange I think yes, is the short answer that it's remarkable that in a civil law jurisdiction, you would not be able to point to a statute that says D. Q. Has this duty and it's actionable and tort. Instead, what you have is that Louisiana Environmental Quality Act that I quoted that says D. Q. Is not on the hook for private contamination. So we're just gonna invent it. You know, we know that the Department of Highways Department of Transportation can be yes. Yes, I think that's right, Your Honor. Each statute is judged on its own. And so there are Louisiana Department of Health cases in the Louisiana courts that are binding that stretch back decades that hold the D. H. H. Does have a specific duty in those cases. And I think is that based on the statute? Yes, yes. And you can read, for example, the statute that directly imposes the duty and in those cases that they cite for those types of scenarios are cases where it says, for example, D. H. H. Or D. Q. Must do an inspection every year. Plaintiff alleges they did not inspect every year or they did not inspect at all. That's not what we have here. Even if you look at the regulation we have, you must do a reasonable notification to the parties D. Q. Reasonably determines to be affected. And remember here, D. E. Q. Did notify these parties. They don't like the timing of the notification, but this is not a question where it's a brought the lawsuit, right? That's why they brought the lawsuit. But that is a question that goes to discretionary function. That's goes to a question of whether there's a clear, straightforward duty that could be violated. Now, as to the injunction, uh, the injunction follows directly from longstanding principles of established in this court and in many other courts that even jurisdictional threshold without prejudice type rulings can decide issues that can have collateral estoppel effect in future litigation. That is not at all unusual. Think of an advanced notion. If we undid the injunction and just let that proceed and hold this in abeyance to see what happens because that would answer for sure the question without certifying it. Well, I think that that would reward plaintiffs sham lawsuit. And let me explain why it's a sham lawsuit. We think the injunction is absolutely correct on the collateral estoppel principles and as a matter of the discretion of the district court. So we we would resist the idea of an advance. And the reason is, let's take a look at that lawsuit. That lawsuit is not a traditional lawsuit where the plaintiffs are seeking remedies, uh, you know, damages or even a declaration of breach against D. E. Q. If you look at 10 76, that's their pleading. They say we don't want damages. We don't even want a declaration that D. E. Q. Breached its duty. All we want is a declaration that D. E. Q. Has a duty. So this is not some bona fide effort to litigate a case through the judgment in state court. They admit on the record at 11 69 to 70 that they want to take that declaration from the state court and bring it back into federal court and say D. E. Q. Does have a duty. Therefore, we destroy federal jurisdiction in the existing case. Light is on Mr Street. Thank you. Thank you. So you say time for rebuttal, sir. Yes, I think I have five minutes. Uh, first of all, I'm gonna kind of go quickly through the issues. Obviously, regulation can be the source of a duty in Louisiana law. I think there are many cases that say it one that I have available here. Gatlin versus Energy Corporation 9047 2nd 31 page 36. It's common knowledge that that the in Louisiana law, the basis of tort liability is Article 23 15. And there's a major jurisprudential gloss on that particular on that particular statute. And, uh, that's why, uh, tort duties, uh, tort duties have, uh, in deciding whether or not there is a tort duty. There are lots of things. What's looked regulation? What do you say? The council argument that regulation only requires notice when the department reasonably determined likely to be adverse help. Judge discretionary judge. I have a I have a answer to that. I think that will settle that issue. Justice Dennis of this court and Petrie versus Appaloosa's General Hospital, which is a landmark case in Louisiana. Um, justice, he said in Petrie versus Appaloosa's General that this is how you determine this is the question you ask in Petrie, says the question you asked in determining duty is this. Given the relationship and circumstances of the parties, does the law impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff in violation of which is considered to be fault? And if you look at the if you look at the Louisiana law in the case law, it says tort duties. Tort duties can be determined based on historical customs, practices and knowledges of practices and knowledge of the industry. Applicable regulations. The duty set forth in contracts, statutory law and the moral and the moral and ethical considerations related to the conduct that issue. And the fact that this is a that the regulation provides a reasonable that reasonable conduct is mandated doesn't mean it's discretionary. Doesn't doesn't mean it at all. Because as as Justice Dennis points, timing is in the D. Q's evaluation and they did give the notice and that brought them a lawsuit. Yes, what happened? Right? The timing is definitely in the notice and the timing was unreasonable based upon the regulation. And I think the fact that what about the regulation states the timing that you think they were unreasonable on? Well, if you look at the petition, the original petition in this case, which is quite lengthy, it gives a blow by blow, date by date description of what they knew when they knew it and when they took action and they had enough information long, many, many years before they gave this notice that they were supposed to provide the notice. Uh, and at a minimum, we are allowed to go into court to prove that they waited too long, that they were unreasonable. We can't decide the case based upon if there's a factual issue as to whether or not it's reasonable or not, we still have a right to go into court. The regular lady, the regulatory scheme that's being talked about American waste has nothing to do with this case. The regulatory scheme involves, uh, uh, administrative procedure that's applied to regulated entities. This case does not involve that time and time again, including the cases that we cited, the carpet, the Sarpy case, the a bear case and the and the Wilson case and the Wilson, which is actually a Louisiana appellate court case. The other two cases, those are based upon a statute 2012 30 calling 2012, which says, uh, DQ was supposed is supposed to, uh, it's supposed to inspect regulated facilities and causes of action were affirmed in all of those cases. So we there is no requirement for exhaustion that I can find anywhere. The American waste case that was that they're basing their analysis on is basically a case involving whether or not, uh, the appeal in that case was a civil matter or not. It was an appeal with regard to a regular regulation involving a regulated entity had nothing to do with this particular situation. Under Louisiana law, we can go into court and sue D. E. Q. They did it in Sarpy. They did it in a bear. They did it in Wilson. I don't know why this case is any different. We have a very broad set of factors that the courts can look at to determine duty, and I doubt if anyone can say that there is no possibility that we can't prove to Louisiana court court that there is a duty now with regard to the need to wrap it up. Okay, I want to point out that the regulation was provided to the district court before the district court issued the injunction. I don't have the record on appeal site, but it's a document 127 in the district court. The district court before the district court enters it is injunction wanted to see the actual suit that we filed in state court, and the regulation was attached to that suit. I think it was on exhibit B. So this wasn't sprung during the appellate process. Not that I'm aware of. I don't. I think I think we did. I'm not sure we argued it in our original brief. We did argue it in the reply brief. Okay, thank you. Thank you. We have your arguments. This case is submitted. The court will take